| VASO, L.L.C. | * | NO. 2019-CA-0684 |
| | | |
| VERSUS | * | |
| | | COURT OF APPEAL |
| BRAVE NEW WORLD | * | |
| INVESTMENTS, L.L.C., THE | | FOURTH CIRCUIT |
| SHANKLE PARTNERSHIP, 500 | * | |
| FRENCHMEN ST., INC., IV | | STATE OF LOUISIANA |
| TORRES ENTERPRISES, | * * * * * * * | |
| L.L.C. (FKA FQ IV HOLDINGS, | | |
| L.L.C.), SAMANTHA NOEL | | |
| SHANKLE AND KIMBERLY | | |
| ANN SHANKLE | | |

| CONSOLIDATED WITH: | CONSOLIDATED WITH: |
| | |
| VASO, L.L.C. | NO. 2019-CA-0685 |
| | |
| VERSUS | |
| | |
| BRAVE NEW WORLD | |
| INVESTMENTS, L.L.C., THE | |
| SHANKLE PARTNERSHIP, 500 | |
| FRENCHMEN ST., INC., IV | |
| TORRES ENTERPRISES, L.L.C. | |
| (FKA FQ IV HOLDINGS, L.L.C.), | |
| SAMANTHA NOEL SHANKLE | |
| AND KIMBERLY ANN SHANKLE | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-10772, DIVISION "F"
Honorable Christopher J. Bruno, Judge
* * * * * *
**JUDGE SANDRA CABRINA JENKINS**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Sandra Cabrina Jenkins, Judge Regina Bartholomew-Woods)

***BELSOME, J., DISSENTS WITH REASONS***

Robert W. Mouton
Jason M. Cerise
Peyton C. Lambert
LOCKE LORD, LLP
601 Poydras Street
Suite 2660

New Orleans, LA 70130
Mitchell William Herzog
ATTORNEY AT LAW
1747 S. Highway
Round Top, TX 78954


COUNSEL FOR PLAINTIFF/APPELLEE


Freeman R. Matthews
ATTORNEY AT LAW
8301 West Judge Perez Drive, Suite 303
Chalmette, LA 70043

E. John Litchfield
Carey B. Daste
BERRIGAN LITCHFIELD, LLC
201 St. Charles Avenue, Suite 4204
New Orleans, LA 70170--4204

Leonard L. Levenson
Christian W. Helmke
Colleen Boyle Gannon
Donna R. Barrios
LEONARD L. LEVENSON & ASSOCIATES
424 Gravier Street
First Floor
New Orleans, LA 70130


Sidney D. Torres, III
Roberta L. Burns
Erica N. Beck
LAW OFFICES OF SIDNEY D. TORRES, III, APLC
8301 West Judge Perez Drive
Torres Park Plaza, Suite 303
Chalmette, LA 70043

COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**

**MAY 20, 2020**

SCJ

RBW

This action was brought by plaintiff/appellee Vaso, L.L.C. ("Vaso"), to enforce a commercial lease that contained a right of first refusal to be exercised upon the sale of property located at 1407-1411 Decatur Street, 502 Frenchmen Street, and a garage on Chartres Street in New Orleans (collectively, the "Property").[1] Defendant/appellant Brave New World Investments, L.L.C. ("BNW"), was the owner and lessor of the Property. Defendants/appellants Samantha Noel Shankle and Kimberly Ann Shankle are members of BNW, and are partners in the Shankle Partnership. BNW; the Shankle Partnership; Samantha Shankle; Kimberly Shankle; and 500 Frenchmen St., Inc.; and IV Torres Enterprises, L.L.C. f/k/a FQ IV Holdings, L.L.C. ("Torres") (collectively, "Defendants") appeal the May 24, 2019 trial court judgment granting Vaso's motion for partial summary judgment, and denying Defendants' motion for partial

---

[1] BNW's Property included six residential condominiums, two commercial condominiums, and a separate warehouse property operated as a parking garage. One space was leased by Vaso as a bar, music and food venue, and the second space was leased to Mona's Café, a Middle Eastern restaurant.

summary judgment, after finding that Vaso properly exercised its right of first refusal to purchase the Property from BNW. For the reasons that follow, we affirm the trial court's May 24, 2019 judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about November 15, 2009, Vaso entered into a lease agreement (the "Lease") with BNW whereby Vaso leased the Property. The Lease was recorded on December 12, 2014, in the conveyance records of Orleans Parish. Under the Lease, Vaso was granted a right of first refusal ("ROFR") to purchase the building and associated garage, subject to the Lease. Specifically, the Lease provides:

> RIGHT OF PURCHASE - Lessee to have right of first refusal to purchase the building and associated garage located on Chartres St. Lessee will have the right to match any written offer received by Lessor during the course of this lease. Lessee shall have ten (10) days after receipt of the written offer to accept the match and execute a purchase agreement with lessor on the same terms and conditions as the initial offer received by Lessor.

In October 2018, BNA received three offers to buy the Property. BNW did not accept any of them. Torres submitted a conditional offer on October 3, 2018, but without a sales price. Torres' offer included an escalation clause which provided that Torres would offer $60,000.00 more than any other bid. All of the offers were subject to the right of first refusal held by Vaso. On October 3, 2018, the Shankle Partnership extended a counteroffer to Torres, which changed the escalation clause to a total price of $5,600,000.00. The counteroffer also required a deposit of $500,000.00, a 10-day due diligence period, a closing date of January 7, 2019, and the sale would be subject to tenant's right of first refusal. Torres accepted this counteroffer without conditions on October 4, 2018. On that date,

2

Torres and BNW entered into a purchase agreement expressly stating that it was "subject to tenant's right of first refusal to purchase."

On October 5, 2018, Samantha Shankle sent Vaso an email containing only part of the Torres offer, most notably omitting the sales price. The next day, on October 6, 2018, Samantha Shankle sent Vaso the complete and fully executed October 4th offer, stating "here's the amount we all agreed on," and asking Vaso to "let me know what you decide." On October 9, 2018, Vaso obtained an agreement with businessman Kishore Motwani to finance the purchase of the Property.

In his deposition, Sidney Torres, IV revealed that on October 9, 2018, Torres learned that Vaso was matching the October 4th offer. On October 10, 2018, Torres' realtor emailed Vaso an addenda to the offer. The addenda contained new sale terms and conditions that accelerated closing by 75 days, rendered the previously refundable $500,000.00 deposit non-refundable, and eliminated due diligence. The addenda provided that "[i]f tenant exercises their option for purchase," the entire purchase price was required to be immediately placed into escrow pending closing. This October 10th notice to Vaso also stated that, in order to exercise its ROFR, Vaso could no longer match the initial October 4th offer, but now had to match the subsequent, new "additional terms" contained in the October 10th "addendums and amendments."

On October 12, 2018, Vaso sent BNW, its principals, and its realtor correspondence via email and priority mail stating that Vaso was exercising its ROFR. On October 16, 2018, Vaso executed a matching purchase agreement that incorporated all of the terms and provisions of the October 4th purchase agreement between BNW and Torres, and made demand on BNW to execute the purchase

3

agreement with Vaso. However, instead of signing the purchase agreement with Vaso, on October 18, 2018, BNW sold the Property to a Torres entity, 500 Frenchmen. To induce BNW to sell, Torres had offered a blanket indemnity to BNW and its entities. With the protection of Torres' personal indemnity, BNW was willing to sell to Torres even though Vaso had made formal demand to BNW to execute the matching agreement.

On October 25, 2018, Vaso filed a "Petition for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Declaratory Relief, Specific Performance and Damages." In the Petition, Vaso sought to enforce its ROFR contained in the Lease, and to obtain specific performance. Defendants filed a reconventional demand against Vaso. After extensive discovery, Vaso and Defendants filed cross motions for summary judgment. On May 24, 2019, the trial court signed a judgment granting Vaso's motion and denying Defendants' motion. On June 6, 2019, the trial court designated the May 24, 2019 judgment as a final appealable judgment in accordance with La. C.C.P. art. 1915(B). The Shankle Partnership and the Shankles filed an appeal. 500 Frenchmen and IV Torres Enterprises also filed an appeal. The two appeals were consolidated.

## DISCUSSION

**Standard of Review**

We apply a *de novo* standard of review in examining a trial court's ruling on summary judgment. *Carrero v. Mandina's, Inc.*, 19-0158, p. 3 (La. App. 4 Cir. 8/7/19) -- So.3d --, 2019 WL 3719552, *writ denied*, 19-1554 (La. 11/25/19), 283 So.3d 497. Accordingly, we use the same criteria that govern a trial court's consideration of whether summary judgment is appropriate. *Id.* "A motion for summary judgment shall be granted if the motion, memorandum, and supporting

4

document show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

4

## Burden of Proof

La. C.C.P. art. 966(D)(1) governs the mover's burden on a motion for summary judgment:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Defendants argue that Vaso's ROFR was not validly exercised because Vaso did not match the October 10th counteroffer accepted by Torres, which included the two new addenda. Defendants also contend that Samantha Shankle and Vaso failed to comply with the notice provision of the Lease by using email instead of certified mail or personal delivery. Finally, Defendants argue that Vaso's ROFR is invalid because Vaso assigned the Lease and the ROFR to Quarter Holdings, L.L.C., an entity formed by Motwani.

We first address Defendants' contention that Vaso did not validly exercise its ROFR.

## Right of First Refusal

Under Louisiana law, a party may agree that he will not sell a certain thing without first offering it to a certain person. The right given to the latter in such a case is a right of first refusal that may be enforced by specific performance. La. C.C. art. 2625. The grantor of a right of first refusal may not sell to another person unless he has offered to sell the thing to the holder of the right on the same terms,

5

or on those specified when the right was granted if the parties have so agreed. La. C.C. art. 2626. *See Price v. Town of Ruston*, 171 La. 985, 991 (La. 1931) (the purpose of a right of first refusal is to prevent the property from being sold to another without being offered to the holder at the price the other buyer would give for it). "The right of first refusal [imposes] on the grantor an obligation not to do i.e. not to sell to another before offering to sell to the grantee, rather than an obligation to do i.e. sell to the grantee first." *6126, L.L.C. v. Strauss*, 13-0853, p. 15 (La. App. 4 Cir. 12/14/13), 131 So.3d 92, 102. The right of first refusal is subject to two suspensive conditions: (1) the grantor's intent to sell; and (2) the grantee's agreement to purchase "on the same terms, or on those specified when the right was granted if the parties have so agreed." *Id.* "The same terms of the offer made to another person (price, modalities of payment, etc.) must be made to the holder of the right of first refusal." *Id.*

Defendants contend that, in accordance with the Lease, BNW, by certified letter dated October 10, 2018, offered the Property to Vaso on the same terms on which it had agreed to sell the Property to Torres. According to Defendants, these terms were set forth in the addenda: (1) $5,600,00.00 cash deposited in an interest bearing account; (2) a $500,000 non-refundable deposit; (3) assumption of all leases; (4) closing in 15 days, and (5) an agreement to assist the seller in a 1031 tax exchange.

According to Defendants, Vaso was required to either accept or reject the offer presented in accordance with "the identical terms of the agreement" between Torres and BNW. In other words, after the October 10th notice, Vaso could no longer match the initial October 4th offer, but now had to match the subsequent newly introduced, and more onerous "additional" terms contained in the October 10, 2018 "addendums and amendments." According to Defendants, when Vaso

refused to timely and unconditionally accept the terms of the October 10th offer presented, BNW was entitled to sell the Property to Torres.

Vaso contends that Samantha Shankle's October 6, 2018 email, attaching the full and complete Torres offer, constituted notice of the right of first refusal, and triggered the ten-day period to accept and match the initial offer. According to Vaso, BNW and Vaso agreed to specified terms and conditions of sale on October 4th when Torres accepted BNW's October 4th offer, and that these were the initial "terms and conditions on which [BNW] intended to sell to Torres." According to Vaso, the holder of a right of first refusal cannot be "required to accept more onerous terms" than those in the agreement between seller and buyer and sent to the holder when the right was triggered. *See Keene v. Williams*, 423 So.2d 1065, 1072 (La. 1982) ("Under Keene's right of first refusal, he had only to accept the *same* terms as were in the attached Bayou agreement. He could not be required to accept more onerous terms but neither was he entitled to more favorable terms.") (italics in original).

The record shows that Samantha Shankle testified that the terms of BNW's agreement to sell with Torres triggered the ROFR. Kimberly Shankle testified that "once you settle on a price, then Vaso had a right to match that exact thing." And Sidney Torres, IV testifying individually and on behalf of the Torres entities, stated that the October 4th offer was "expressly subject to tenant's right of first refusal to purchase." It is also undisputed that BNW sent these initial terms and conditions of sale to Vaso on October 6th and asked Vaso to "let me know what you decide." BNW's email stated these initial terms and conditions of sale were being sent "per the lease agreement."

We agree with the trial court's conclusion that Vaso complied with the ROFR:

Defendants argue that Vaso failed to comply with all of the terms and conditions of the initial offer. In other words, Vaso failed to accept the terms of the two addenda executed on October 10, 2018. This Court disagrees with that interpretation. Addenda are by definition[2] clarifications or supplements which provide more information. The addenda signed by Torres and Shankle are additional terms and conditions which were added after Torres accepted the counter-offer on October 4, 2018, and therefore do not constitute a *final offer*. (Emphasis in original.)

This assignment has no merit.

**Notice**

BNW contends that formal notice to Vaso was required to trigger the ten-day period for rejecting or accepting the right of first refusal. According to BNW, until that notice is given, the grantor and the third party are free to negotiate the best terms and conditions for sale. Specifically, BNW argues that the October 6 notice of the October 4th offer "per the lease" and asking Vaso to "let me know what you decide" must be deemed never to have existed because it was sent by email instead of certified mail or personal delivery.

The notice provision in the Lease provides:

> Any notices, demands, or citations provided for herein must be in writing and will be deemed given when deposited by certified mail (regardless of when or if received by the addressee), or when actually delivered in person to the parties or their designated agents at the address so stated in this lease or at such other addresses as they may from time to time direct.

BNW sent Vaso notice of Torres' offer by email, which was accepted by email. La. C.C. art. 1927 provides:

> A contract is formed by the consent of the parties established through offer and acceptance.
> Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing or by action or inaction that under the circumstances is clearly indicative of consent.
> Unless otherwise specified in the offer, there need not be conformity between the manner in which the offer is made and the manner in which the acceptance is made.

---

[2] The trial court cites the definition of "addendum" taken from Black's Law Dictionary (10th ed. 2014).

8

We agree with Vaso and the trial court that the ROFR in the Lease only requires that the offer be in writing. The provision is silent as to how the lessee must accept the offer. Furthermore, the reference to certified mail and personal delivery only determines when a notice is deemed to have been received by the recipient if there is a dispute over receipt or timing of receipt.

Furthermore, La. C.C.P. art. 1936 provides:

> A medium or manner of acceptance is reasonable if it is the one used in making the offer or one customary in similar transactions at the time and place the offer is received, unless circumstances known to the offeree indicate otherwise.

Especially given the very narrow time frame for this deal, we find that the transmission of notices by email is reasonable under the circumstances.

Finally, any defect in the method by which notice was given by BNW and Vaso was waived by the parties. *See Anny v. Babin*, 12-164, p. 8 (La. App. 5 Cir. 7/31/12), 99 So.3d 702, 706.

**Assignment**

Defendants contend that because Vaso assigned the Lease and the ROFR to Quarter Holdings, LLC, they were entitled to treat the Lease as terminated. It is correct that the Lease may not be assigned ("This lease may not be assigned, and the premises may not be sublet, partially or fully without the written consent of lessor."). The record, however, reveals that Vaso did not assign the Lease, in whole or in part. Neither did Vaso assign the ROFR. Vaso assigned the purchase agreement, which was assignable. The agreement states that "Buyer shall have the right to assign this agreement and all of buyer's rights and remedies hereunder." All Vaso agreed to assign was the same purchase agreement which Torres assigned.[3] Vaso's agreement to assign an assignable purchase agreement to

---

[3] On October 17, 2018, BNW conveyed the Property to the Shankle Partnership. On October 18, 2018, the Shankle Partnership conveyed the Property to 500 Frenchmen, which was an assignee of FQ VI.

9

Quarter Holdings, L.L.C. is not a lease violation, and does not cause the termination of the Lease and excuse BNW's breach of the ROFR.

This argument is without merit.

**Other Errors**

Finally, Defendants attempt to interject a number of other issues never raised below. These new issues include: (1) a typographical error exists that fundamentally changes the meaning of the ROFR; (2) Vaso's exercise of the ROFR was untimely; (3) Samantha Shankle needed formal corporate authority (e.g., a power of attorney) to send Vaso an email on behalf of BNW; and (4) Vaso's ROFR was owned in division with another tenant. "'An issue not raised in pleadings or in a motion for summary judgment in the Court below cannot be raised for the first time on appeal.'" *Regions Ins., Inc. v. Alliance CAB Service, LLC*, p. 8 (La. App. 4 Cir. 3/4/20), – So.3d – , 2020 WL 1056809 (quoting Uniform Rules, Court of Appeal Rule 1-3; *Nixon v. K & B, Inc.*, 93-2055, p. 3 (La. App. 4 Cir. 1/19/95), 649 So.2d 1081 1089).

We do not address these arguments.

### CONCLUSION

The addenda signed by Torres and BNW are additional terms and conditions which were added after Torres accepted the counteroffer on October 4, 2018, and therefore do not constitute the initial offer. We find that the "initial offer" which Vaso was entitled to match is the terms and conditions of sale as agreed by BNW and Torres in the October 4, 2018 notice, and that, as a matter of law, Vaso properly exercised its right of first refusal by matching that counteroffer. We also find that, as a matter of law, formal notice of the Torres offer was not required to trigger the ten-day period for rejecting the offer; the manner of giving notice was reasonable under the circumstances. We do not address the arguments by Defendants that were not raised below.

10

Based upon our *de novo* review of this matter, we find no error in the trial court's judgment.  The record shows that Defendants did not produce factual support sufficient to establish that they would be able to satisfy their evidentiary burden of proof at trial.  We find there are no genuine issues of material fact, and that Vaso is entitled to judgment as a matter of law.  Accordingly, we affirm the trial court's May 24, 2019 judgment.

**AFFIRMED**